UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HOLLY SARRÉ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0910** |
| **CITY OF NEW ORLEANS** | **SECTION "T"** |

The Plaintiff, Holly Sarré, filed a Motion for Partial Summary Judgment under Fed. R. Civ. P. 56. The Court, having considered the record, the evidence submitted, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

**I.     Background**

Holly Sarré, the Plaintiff, is an artist who wishes to sell prints of her original artwork in Jackson Square. She is, however, prohibited from doing so by §§ 110, 121-132 of the New Orleans City Code, which specifically provides that artists on the Jackson Square fence are allowed to create and sell "original" art only, defining "original" as "those works produced and offered for sale by the artist which have been accomplished essentially by hand and precludes any mechanical or duplicative process in whole or in part."[1] Plaintiff claims that this ordinance deprives her of her freedom of speech as provided and protected by the First Amendment of the United States Constitution and basic economic liberty protected by the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment to the United States Constitution.[2]

---

[1] Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at p. 1.
[2] *Id.* at 1-2.

Both Plaintiff and Defendant agree that the First Amendment applies to art.[3] Additionally, both Plaintiff and Defendant agree that the statute does not distinguish between prohibited and permitted speech on the basis of content.[4] Both parties, moreover, agree that the court should determine whether the regulation is "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication" and whether the regulation furthers an important or substantial governmental interest.[5]

## II.     Arguments by Plaintiff in Support of Her Motion for Partial Summary Judgment

While Plaintiff agrees that "preserving the distinctive charm, character, and *tout ensemble* of the Quarter is a significant government interest, she does not believe that this government interest is sufficient to defeat her right to freedom of speech because she believes that the ordinance is not narrowly tailored to achieve that end.[6] Plaintiff argues that the use of mechanical or duplicative processes to create prints of original art does not adversely affect the charm, character, and *tout ensemble* of the Quarter, and she proposes that a more narrowly tailored law would prohibit only non-artists selling other people's works or reproductions.[7] She notes that, like artists showcasing original artwork, she requires fences to display her artwork.[8]

Plaintiff argues that once she has shown that her freedom of expression has been restricted, the burden shifts to Defendant to show that the restriction is narrowly tailored to and does achieve a significant governmental interest and that ample alternative means of expression

---

[3] *Id.* at 3; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 2.
[4] Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 6; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 6.
[5] *International Society for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494 (5th Cir. 1989); Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 7; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 6; *Horton v. City of Houston*, 179 F.3d 188, 194 (5th Cir. 1999).
[6] Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 11.
[7] *Id.*
[8] *Id.* at 12.

are available to her.[9]  Plaintiff argues that none of the reasons Defendant gives for refusing to allow Plaintiff to show her prints prove that granting relief to Plaintiff will have an adverse effect on the New Orleans tourism industry.  She argues that the showcasing of her work can be distinguished from selling T-shirts and postcards, and she contends that any concerns presented in affidavits provided by the city rest on speculation.[10]

Plaintiff additionally argues that she does not have ample alternative channels for the sale of her work.  She notes that Jackson Square is a unique location to exhibit art, and she notes that the French Market, proposed as an alternative by the City, is not part of the Jackson Square art colony.  Plaintiff argues that she should be allowed to sell her artwork in Jackson Square because she produces original artwork in addition to prints; whereas in the French Market, only prints are sold.[11]  Plaintiff contends that the fact that an artist can sell art in other places to other audiences is not a sufficient alternative to being allowed to sell art in Jackson Square, which Plaintiff notes is the first and most important public square, traditionally and historically.[12]

### III. Arguments by Defendant in Opposition to Plaintiff's Motion for Partial Summary Judgment

Defendant argues that the selling of prints in Jackson Square would have a negative impact on the *tout ensemble* of the Vieux Carre, and they argue that it is important for tourists to be able to see the process of creation of original artwork.[13]  Defendant contends that prints could be considered "eyesores" in an area reserved for the creation of original artwork.[14]  Defendant points to a study done by the Bureau of Government Research that notes that changes in conditions in the Vieux Carre would make the environment uncomfortable for "fringe" groups

---

[9] *Id.*
[10] *Id.* at 13-
[11] *Id.*
[12] *Id.* at 17; *See Wexler v. City of New Orleans*, 267 F. Supp. 2d 559 (E.D. La. 2003).
[13] Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 17.
[14] *Id.* at 18.

which add to the character of the Quarter.[15]  Defendant argues that the testimony and affidavits "of the many artists, interested persons, and politicians" that it provided are not "merely speculative" and contends that economic theory is founded on speculation, and it should stand as proper evidence because the assumptions that theorists use have been proven or borne out time and time again.[16]  Defendant argues that other artists producing original work would be adversely affected by Plaintiff's cheaper prints being sold due to the law of supply and demand, and Defendant provides affidavits of artists who contend that they have seen a decrease in sales of original artwork since Plaintiff began selling prints.[17]

The Jackson Square Artist's Association, Inc. (JSAA) provided an Amicus Curiae Memorandum that noted that in the 1950's, prints sold in Pirates Alley had an immediate and negative effect on the sale of original art work created by artists working around Jackson Square and in Pirates Alley.[18]  The JSAA contends that the issuance of the regulations limiting Jackson Square and Pirates Alley to the creation and sale of original artwork led to the growth and prosperity of the area as a fine and interesting public art market.[19]  Additionally, the JSAA provides affidavits of artists who claim that they were able to learn how to paint from artists in Jackson Square, and Defendant contends that if it allows the sale of prints, and this negatively impacts the creation of original artwork, new artists will have less access to the learn from the artists in Jackson Square.[20]  The JSAA also argues that art colonies elsewhere have been

---

[15] Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 9.
[16] *Id.* at 15.
[17] *Id.* at 16-17.
[18] *Memorandum of Amicus Curiae, Jackson Square Artists Assoc., Inc. in Opposition to Plaintiff's Motion for Partial Summary Judgment* at 4.
[19] *Id.* at 5.
[20] *Id.* at 7.

irreparably damaged by the sale of prints, and it specifically points to the art colonies in Montreal and Paris as examples.[21]

Defendant argues that the ordinance is narrowly tailored.  Defendant notes that an incidental burden on speech is permissible so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.[22] Defendant argues that a more narrowly tailored ordinance is impracticable due to difficulties in enforcement, and it specifically cites the problem of forgeries and multiple duplicates eroding the area.[23]  The JSAA argues that once the bright line between "original" artwork and "reproduction" artwork is crossed, there is no logical stopping point, and it notes that if the City allows "signed and numbered" prints only, it will soon find itself sued by artists who wish to sell unsigned prints.[24]

Finally, Defendant argues that Plaintiff has multiple channels available to sell prints, and it specifically proposes the Dutch Alley Artists Co-op in the French Market, two blocks from Jackson Square, the French Market Flea Market, local galleries, and the internet.  Defendant notes that an adequate alternative does not need to be the speaker's first choice.[25]  Defendant contends that Plaintiff is only prohibited from selling prints in a very small, defined, and unique area of the city and that she has plenty of adequate alternatives.[26]

**IV.   Law and Analysis**

---

[21] *Id.* at 10.
[22] *United States v. Albertini*, 472 U.S. 675, 688-89 (1985); Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 12.
[23] Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 17.
[24] *Memorandum of Amicus Curiae, Jackson Square Artists Assoc., Inc. in Opposition to Plaintiff's Motion for Partial Summary Judgment* at 12.
[25] *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981); Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 20.
[26] Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 20.

### A.    Law on Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[27]  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[28]  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysicial doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*."[29]

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."[30]  Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[31]

### B.    Analysis of the Court

Because the ordinance in question restricts Plaintiff's freedom of expression, it must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."[32]  In the present case, both parties agree that the preservation of the

---

[27] Fed. R. Civ. P. 56(c).

[28] *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d. 909, 912-13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *cert. denied*, 506 U.S. 832 (1992)).

[29] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).

[30] *Matsushita*, 475 U.S. at 588.

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[32] *International Society for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494 (5th Cir. 1989).

*tout ensemble* of the Vieux Carre is a substantial governmental interest, so the question turns on whether the ordinance is sufficiently narrowly tailored to meet Defendant's objectives. Plaintiff has not provided adequate evidence to support her contention that the ordinance is not narrowly tailored. Defendant has provided ample evidence of the negative impact on the Jackson Square art community of the sale of prints in the past, and it justifies its belief that the sale of prints today will have a negative impact on the art community with economic theory and the examples of the degradation of art communities elsewhere in the world due to the sale of prints. Additionally, Defendant has noted difficulties in enforcement as a reason for its "bright line" rule. Because of the need to preserve the distinctive atmosphere of the Vieux Carre as a site for the production and sale of original artwork, the difficulties in enforcement of a more narrowly tailored ordinance, the small and defined area to which the ordinance applies, and the ample nearby alternatives for the sale of prints, the Court finds that there are genuine issues of material fact and the plaintiff is not entitled to a judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment filed on behalf of Plaintiff, Holly Sarré, be and the same is hereby **DENIED**.

New Orleans, Louisiana, this 9th day of November, 2007.

_____
**UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.**