**UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HOLLY SARRE**, ET AL. | * CIVIL ACTION |
| | * |
| VERSUS | * NO. 05-0910 C/W NOS. |
| | * 09-132, 09-063, 09-3693 |
| | * |
| CITY OF NEW ORLEANS | * SECTION B(4) |

                            **ORDER AND REASONS**

Before the Court are Plaintiffs' Second Motion for Partial Summary Judgment (Rec. Doc. 112) and Defendant's Second Motion for Summary Judgment (Rec. Doc. 113) with corresponding opposing memoranda. (Rec. Docs. 117, 120, 131). Plaintiffs Barbara Yochum and Jack Wittenbrink's Motion to Adopt Plaintiff Sarré's Second Motion for Partial Summary Judgment was granted by an order of this Court filed June 9, 2009. (Rec. Doc. 130). For the following reasons,

**IT IS ORDERED** that Plaintiffs' Second Motion for Partial Summary Judgment is **DENIED** and Defendant's Second Motion for Summary Judgment is **GRANTED**.

                                *BACKGROUND*

On March 24, 2005, Plaintiff Holly Sarré ("Sarré") filed a complaint seeking declaratory and injunctive relief, contending that § 110, 121-132 of the 1995 New Orleans City Code (hereinafter

                                      1

referred to as the "Ordinance"), which prohibits her from selling reproduced prints of her artwork in the Jackson Square area, is unconstitutional. (Rec. Doc. 1). Sarré claimed that the Ordinance, which allows artists in Jackson Square to sell "original"[1] art only, deprives her of the First Amendment right to free speech and violated her Fourteenth Amendment rights under the Due Process, Equal Protection, and Privileges and Immunities Clauses. (Rec. Doc. 1).

On July 31, 2006, the Court administratively closed the case, directing Defendant City of New Orleans ("City") to consider a more narrowly-tailored ordinance that would allow artists to sell reproduced prints of original artwork in Jackson Square, provided that the substantial majority of sales revenue derives from the sale of original work. (Rec. Doc. 32). The Court granted Plaintiff's Motion to Re-open the case on April 12, 2007. (Rec. Doc. 44).

A Court order filed April 15, 2007 denied Defendant's Motion for Summary Judgment and Plaintiff's Motion to Amend Order, and directed parties to conduct further discovery and file cross motions for summary judgment addressing three issues, specifically:

---

[1] The ordinance defines "original" as "those works produced and offered for sale by the artist which have been accomplished essentially by hand and precludes any mechanical or duplicative process in whole or part."

(1) Whether the sale of prints would have an adverse effect on the *tout ensemble* ("general effect") of Jackson Square, and the Veiux Carre in general; (2) Whether the Ordinance is narrowly tailored, (3) Whether the Dutch Alley Artists Coop is an adequate alternative venue accessible to Plaintiff's intended audience. (Rec. Doc. 108). Both Plaintiff and Defendant filed a second motion for summary judgment and opposition memorandum in accordance with this Court's order. (Rec. Docs. 112, 113, 117, 120 131).

Addressing the specific issues directed by the Court, Plaintiff claims that the sale of prints has been occurring for approximately five years without any adverse impact on the tout ensemble of Jackson Square. (Rec. Doc. 112-4). Plaintiff also claims the ordinance is not narrowly tailored, and that she submitted a written proposal to the City outlining two alternative approaches to allow for the sale of prints in Jackson Square. (Rec. Doc. 112-4). Finally, Plaintiff claims that the Dutch Alley Artists Co-op is not an adequate alternative venue because it is not operated by the city government and only allows co-op members to operate on the premises. (Rec. Doc. 112-4). Plaintiff further claims that there is no adequate alternative venue to Jackson Square. (Rec. Doc. 112-4).

Plaintiff asserts that the Ordinance was rarely enforced until an April 2008 "sweep" of Jackson Square, and claims that the sale

of prints has been occurring for approximately five years without any adverse effect. (Rec. Doc. No. 112-4). Plaintiff further claims that "thousands" of prints are likely to have been sold during this period by multiple vendors, and that she has spent approximately 200 days per year selling her artwork in Jackson Square and noticed no negative impact from the sale of prints (Rec. Doc. No. 112-4).

Additionally, Plaintiff claims that the ordinance is not narrowly tailored, and that she submitted a written proposal on July 31, 2006 suggesting amendments that were rejected by the City. (Rec. Doc. 112-13). The amendments in the July 31, 2006 proposal included requiring each licensed artist to submit a yearly affidavit describing the prints and limiting the prints to a series of 250 with no additional reproductions made or sold after that amount of prints had been purchased. (Rec. Doc. 112). On April 5, 2007, the New Orleans city Counsel held a hearing on an amendment to the Ordinance allowing for the sale for up to twenty signed and consecutively numbered prints of up to five original works of art at a time, and the amendment was rejected.

Plaintiff offers additional amendments to the Ordinance that were not included in the written proposal of July 31, 2006, in her Second Motion for Partial Summary Judgment (Rec. Doc. No. 112-4). These amendments include limiting the number of artists allowed to

4

sell prints, requiring that these artists had been engaged in selling prints for the past thirty-six months, and reinforcing the annual affidavit requirement (Rec. Doc. 112-4).

Finally, Plaintiff claims that Dutch Alley is not an adequate alternative venue to reach her intended audience because the premises are operated by the Dutch Alley Artist's Co-op, of which Plaintiff is not a member, and only co-op members are allowed to vend artwork on the premises. (Rec. Doc. 112-4). Plaintiff maintains that there is only one Jackson Square art colony, and no adequate, alternative venue exists. (Rec. Doc. 112-4).

Defendant adopts and incorporates by reference the arguments of the Memorandum in Opposition of Plaintiff's First Motion for Summary Judgment, and claims that the sale of prints will "cheapen" the art colony and convert it into a "print bazaar", thus having a negative effect on the *tout ensemble* of Jackson Square. (Rec. Doc. 119). Additionally, Defendant asserts that the Ordinance is narrowly tailored, and that the City does not have the resources to monitor every artist selling prints. (Rec. Doc. 119). Finally, Defendants claim that the French Market and other available venues are adequate alternative venues for Plaintiff to reach her intended print buying audience. (Rec. Doc. 119).

*DISCUSSION*

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Associates of North Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. The First Amendment Issue**

The Supreme Court has recognized three distinct forums of speech for First Amendment analysis: traditional public, designated public, and non-public forums. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-7 (1983). Sidewalks, streets, and parks owned by the government that have historically been used as places of assembly and communication are categorized as traditional public forums. *United States v. Grace*, 461 U.S. 171, 179 (1983); *Hague v. CIO*, 307 U.S. 497, 515 (1939). In a traditional public forum, the First Amendment right to free speech and expression may be subject to content-neutral government regulation, often referred to as a "time, place, and manner" restriction, provided that the government shows: (1) that the regulation serves a significant government interest, (2) the regulation is narrowly tailored to achieve that significant interest, and (3) that the regulation leaves open ample alternative channels of communication. *Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 535-36 (1980).

In *City of New Orleans v. Dukes*, the Supreme Court held the City had a significant interest in protecting the distinctive character of the Vieux Carre over an equal protection challenge, specifically through an ordinance prohibiting pushcart food vendors from operating in the area. 427 U.S. 297, 304-06 (1976). The Court

reasoned that the City's interest in retaining the unique cultural milieu of the Vieux Carre was justified not only by its historical significance but also by its economic vitality as a major tourist attraction. *Id*.

A content-neutral regulation is narrowly tailored if the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). Accordingly, the regulation does not need to be the least restrictive or intrusive means of achieving the government's interest to pass constitutional muster. *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). A content-neutral restriction on freedom of speech will be upheld if it does not substantially burden more speech than necessary to further the government's legitimate interest. *Id*.

Finally, the content-neutral regulation must leave open ample alternative forums for the expression of free speech to be constitutionally permissible. *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 654-55 (1981). In *Heffron*, the Court held that an ordinance prohibiting the sale or distribution of any printed material except from vendors in a duly licensed location on the Minnesota State Fairgrounds was constitutionally permissible over the First Amendment challenge of the International Society for Krishna Consciousness. *Id*. The Court reasoned that the

availability of booth rentals on the premises coupled with the ability to operate within the delimited spatial dimensions of the fairgrounds provided an ample alternative forum for the purposes of the content-neutral regulation. *Id*.

In the present case, Plaintiff and Defendant are in agreement that the Ordinance at issue (No. 27,787 M.C.S.) is a content-neutral regulation. Additionally, this Court has acknowledged that the City has a genuine interest in maintaining the *tout ensemble* of Jackson Square through the sale of original artwork. (Rec. Doc. 32). However, this Court also stated that it appears reasonable that a small amount of sales may derive from reproductions of an artist's original artwork and a narrowly drawn ordinance could be fashioned without harm to the government interest. (Rec. Doc. 32). These statements, made in the July 31, 2006 administrative order closing the case and directing further discovery on the issues discussed above, are the primary basis for the parties' cross-motions for summary judgment at issue.

The Defendant has provided supporting materials showing the sale of prints does or will have a negative effect on the *tout ensemble* of Jackson Square. Plaintiff's bare assertions that "thousands" (Rec. Doc. 112-4) of prints have been sold without any adverse impact is insufficient to counter Defendant's affidavits of five artists working in the Square detailing how the sale of prints

has negatively affected both the artists colony in Jackson Square and around the world. (Rec. Doc. 95-4). Furthermore, Plaintiff's list of other artists allegedly selling prints and the reader's comments from *City Business* magazine do not establish that the sale of prints has not had a negative effect. (Rec. Docs. 112-6, 112-8). Additionally, Plaintiff's assertion that Defendant conceded that the sale of prints has had no measurable impact on the *tout ensemble* of Jackson Square does not mean that there has not been a negative impact. (Rec. Doc. 112-4). Common sense dictates that the intangibility of cultural milieu is virtually impossible to calculate by objective, measurable standards.

Paradoxically, Plaintiff actually submitted as evidence a signed petition by fifty-seven artists of the Jackson Square Artist's Co-op requesting that the licenses of those artists who sell prints be revoked, evidencing that the Ordinance does have support within the artist community. (Rec. Docs. 112-9, 112-10).

Contrary to Plaintiff's assertions, the Ordinance is narrowly tailored to achieve the significant government interest of preserving the *tout ensemble* of Jackson Square, and the Vieux Carre in general. A content-neutral restriction on freedom of speech will be upheld if it does not substantially burden more speech than necessary to further the government's legitimate interest. *Ward*, 491 U.S. at 799. The Ordinance is not an outright prohibition on

all artwork, and only prohibits prints reproduced through mechanical or duplicative means.

Pursuant to this Court's order filed July 31, 2006, the City did consider an amendment to the Ordinance, conducted a full hearing on April 5, 2007, and rejected the amendments proposed by the Defendant. (Rec. Docs. 32, 59-2, 112-13). The Supreme Court has held that a content-neutral regulation does not need to be the least restrictive or intrusive means of achieving the government's interest to pass constitutional muster. *Ward,* 491 U.S. at 799. Although the Ordinance may not be the most narrowly tailored regulation possible, judicial deference should be afforded to the legislative means employed by the City Council's consideration and ultimate decision regarding the Ordinance. However, we predict, with additional evidence over time, this matter will be revisited.

Finally, adequate alternative venues exist for Plaintiff to reach her intended audience. The Defendant claims that the Dutch Alley Artist's Co-Op, the French Market Flea Market, other print shops, and the internet are all adequate venues. (Rec. Doc. 59). Plaintiff claims that the Dutch Alley only allows Co-Op members to operate, and further claims that the sales tax records submitted by Defendant do not establish that the "flea market" is an adequate alternative venue. (Rec. Doc. 117). However, Defendant maintains that vending areas in the flea market, located blocks from Jackson

Square on Esplanade and the Mississippi River, are available for a fee of $7 per day. (Rec. Doc. 119).

The alternative venue analysis in the case at hand is factually analogous to the Supreme Court's decision in *Heffron*, in which the Court held the availability of rental booths at the state fair and the relative proximity to the intended audience constituted an adequate venue. In the instant case, Defendant has submitted exhibits including the sales revenue of artists selling prints in the French Market, as well as photos of the vendors in operation on the premises. (Rec. Doc. 119). Plaintiff concludes that the French Market is not an adequate alternative venue for selling prints, and generally asserts, that no alternative venue exists for the sale of prints other than Jackson Square. (Rec. Doc. 112-4). We find no support for those conclusory assertions, however well-argued and presented by Plaintiff's Counsel himself, a respected raconteur of sorts about the Vieux Carrè.

It is undisputed that the City has an important interest in maintaining the historical character and social milieu of Jackson Square. Generally speaking, municipal governments have the authority to make legislative judgments founded upon maintaining the culture and unique character of the area. Ultimately, we are convinced that allowing print sales would subvert the creative, improvisatory interplay between working artists and audiences that

12

is inherent in the Jackson Square experience.[2] [3] There is evidence that other artists selling prints were "emboldened" by the fact Plaintiff had temporary permission to sell prints during the pendency of this suit. (Rec. Doc. 119). Based on these considerations, the sale of prints has a negative effect on the *tout ensemble* of Jackson Square because the motivation to sell prints would tend to discourage and limit time and resources for creating original artwork, thereby threatening the survival of a unique and historical artists colony in Jackson Square.

Additionally, while not perfect, the Ordinance is sufficiently narrowly tailored to achieve the interest of preserving the unique character of Jackson Square and the economic vitality of the artists. We further find that the proposed amendments to the Ordinance would be difficult to enforce. At present, we are convinced that the City of New Orleans does not have the resources to verify that artists would not exceed a certain limitation or are only selling prints of their original works of art. We are also concerned that a lifting of the print prohibition in Jackson Square would lead to a proliferation of duplicates and would adversely affect many of the print shops throughout the area. For these reasons, the bright-line prohibition of the sale of prints in

---

[2] Bureau of Government Research, An Economic and Social Study of the Vieux Carré, New Orleans, Louisiana (Hammer, Greene, Siler Associates, 1968).

[3] The Vieux Carré Commission passed a resolution supporting the print-sale prohibition in Jackson Square. (Rec. Doc. 95-5). *See also* Record Document 95-4, affidavits of artists working in Jackson Square.

Jackson Square is narrowly tailored to achieve the legitimate interest of preserving the *tout ensemble* of Jackson, the important artistry within that colony and the Vieux Carré in general.

We are convinced that the nearby French Market is an adequate alternative venue for Plaintiff to reach her intended audience. No one disputes that tourists and locals who frequent Jackson Square also, in large measure, shop and buy in the French Market. There are multiple alternative venues reasonably available for Plaintiff to sell prints, including the Dutch Alley Artist's Co-Op in the French Market, the French Market Flea Market ("Flea Market"), local galleries, and over the internet.

Originality has its place in our colorful City's history. Its creation deserves promotion and protection. And here, for Plaintiffs and other highly touted artists that place is Jackson Square.

New Orleans, Louisiana, this 20th day of July, 2009.

                                    _____
                                    IVAN L.R. LEMELLE
                                    UNITED STATES DISTRICT JUDGE